UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| WOLFHOLE, INC., et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. 1:07CV73 CDP |
| ) | |
| UNITED STATES DEPARTMENT ) | |
| OF AGRICULTURE, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

Plaintiffs are land owners who run tree farm operations where they harvest pine needles, wood chips and other agricultural products. They sought funding under the Department of Agriculture's Conservation Security Program. The USDA denied their applications after concluding that the properties consisted of ineligible forested land. I have carefully reviewed the administrative record in both of the plaintiffs' cases, and I conclude that the agency acted arbitrarily and capriciously in denying plaintiffs' applications. I will therefore grant the plaintiffs' motion for summary judgment, and will vacate the final agency determinations by the Department of Agriculture. I will remand the cases to the agency for reconsideration once the remaining count of the complaint is resolved.

Background

The Department of Agriculture's Conservation Security Program (CSP) is administered by the Natural Resource Conservation Service (NRCS) – a division of USDA. The program provides financial and technical assistance to participants for the conservation, protection and improvement of soil, water and other related resources. 7 CFR § 1469.1(c). Wolfhole, Inc. and Anthony Heckemeyer each filed applications with the NRCS to participate in the CSP for the program year 2005. Both plaintiffs were denied funding under the program, and they now appeal the denial of their claims to this Court.

Wolfhole, Inc. owns approximately 1,464 acres of land in southeast Missouri. Of this land, approximately 592 acres is pasture/grassland, and the remaining 672 acres contains pine trees. The trees are planted in rows and are maintained by Wolfhole through regular mowing, spraying and pruning. Wolfhole harvests pine needles, wood shavings, posts and mulch from the trees, and then sells these agricultural products throughout a multi-state area.

Adjacent to the Wolfhole property, plaintiff Anthony Heckemeyer owns 623 acres of land where he grows pine trees similar to those grown and maintained by Wolfhole. Heckemeyer's trees also yield agricultural products such as pine needles, which he sells to customers.

After plaintiffs applied to participate in the CSP, officials from the NRCS inspected the properties. The NRCS concluded that neither the Wolfhole nor the Heckemeyer pine tree acreage was eligible for funding. The agency concluded that under the regulations governing the program, plaintiffs' pine trees were forest land, and not crop land. The properties were thus not eligible to participate in the CSP. Because Heckemeyer's property was solely pine tree acreage, his application was denied. The agency also determined that Wolfhole's pastureland had been over-grazed, and did not contain the requisite percentage of legumes. When it considered the pasture land together with the pine tree acreage (which by itself was not considered eligible), NRCS classified Wolfhole's property as a whole as Tier II, Category C. Because CSP funding was only made available for Categories A and B in 2005, this classification meant that Wolfhole's property, although eligible to participate, would receive no funding.

Wolfhole and Heckemeyer each appealed these adverse rulings to the National Appeals Division of the USDA. The hearing officer in Heckemeyer's case reversed the NRCS decision, concluding that the agency incorrectly applied the regulations governing the CSP. The officer concluded that Heckemeyer's land was not forest, but rather was a tree farm eligible to participate in the program. The agency then appealed this decision to the Director of the National Appeals

Division. The Director ultimately reversed the hearing officer's decision, and reinstated the earlier finding that Heckemeyer's land was not eligible.

Meanwhile, Wolfhole also appealed the decision with respect to its land, filing a timely appeal with the NAD. The hearing officer then requested from the NAD Director an extension of time to issue his decision. This request was granted, and was made part of the record in Wolfhole's case. As stated in the record, the hearing officer in the Wolfhole case wanted an extension because he was waiting to see whether the decision in Heckemeyer's case would be affirmed or reversed by the Director. Once the Heckemeyer decision was overturned, the Wolfhole hearing officer issued his ruling, denying funding. This decision was later affirmed by the Director.

Both plaintiffs now seek judicial review of the adverse rulings issued by the Director of the National Appeals Division. All parties agree that these rulings constitute final agency action for purposes of judicial review. *See* 7 U.S.C. § 6999 ("A final determination of the [National Appeals] Division shall be reviewable and enforceable by any United States district court of competent jurisdiction in accordance with chapter 7 of Title 5.").

## Standard of Review

Plaintiffs' request for judicial review of the administrative denial in this case is governed by the Administrative Procedure Act. 7 U.S.C. § 6999; 7 C.F.R.

§ 11.13. Under the APA, a court must hold an agency's action unlawful and set it aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "unsupported by substantial evidence . . . reviewed on the record of an agency hearing provided by statute." 5 U.S.C. § 706(2)(A), (F). The parties filed cross-motions for summary judgment, but they agree that there are no genuine disputes of material fact – the sole dispute here is how the regulations should be applied to this land. The standards set by the APA govern my review of that question.

A court must defer to an agency's interpretation of its own regulations unless an "alternative reading is compelled by the regulation's plain language or by other indications of the Secretary's intent at the time of the regulation's promulgation." *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994) (quoting *Gardebring v. Jenkins*, 485 U.S. 415, 430 (1988). If a regulation is plain on its face, a court shall give no deference to an agency's attempt at interpretation. *St. Luke's Methodist Hosp. v. Thompson*, 315 F.3d 984, 987 (8th Cir. 2003). Additionally, "if the [agency's] interpretation of its own regulation is unreasonable, [a court] is free to reject it." *Advanta USA, Inc. v. Chao*, 350 F.3d 726, 728 (8th Cir. 2003).

## Discussion

The regulations governing the CSP are set forth in 7 C.F.R. Ch. XIV, Part 1469. Several definitions contained in the regulations are relevant to the determination of whether plaintiffs' land is eligible. To be enrolled in the CSP, eligible land must be:

(i) Private agricultural land; [or]
(ii) Private non-industrial forested land that is an incidental part of the agricultural operation.

"Agricultural land" is defined in part as:

> cropland, rangeland, pastureland, hayland, private non-industrial forest land if it is an incidental part of the agricultural operation, and other land on which food, fiber, and other agricultural products are produced.

"Cropland" is defined as:

> a land cover/use category that includes areas used for the production of adapted crops for harvest, including but not limited to land in row crops or close-grown crops, forage crops that are in a rotation with row or close-grown crops, permanent hayland, horticultural cropland, or orchards, and vineyards.

"Forest land" is defined in part as:

> a land cover/use category that is at least 10 percent stocked by single-stemmed woody species of any size that will be at least 4 meters (13 feet) tall at maturity. . . . Ten percent stocked, when viewed from a vertical direction, equates to an aerial canopy cover of leaves and branches of 25 percent or greater.

7 C.F.R. §§ 1469.3, 1469.5(d).

The NRCS concluded that because the Wolfhole and Hekemeyer properties contained pine trees, which are "single stemmed woody species greater than 4 meters in height," the land met the definition of "forest land." Therefore, under the agency's reasoning, the land would only be eligible if the forest was an "incidental part" of the agricultural operation. Here, the pine trees *are* the agricultural operation – they are clearly not "incidental." Thus, the agency concluded that the properties contained ineligible forest land and so it denied the plaintiffs' request for CSP funding.

A plain reading of the text governing the CSP shows that the agency unreasonably interpreted its own regulations and misapplied the regulation text to the facts of this case. The government's own findings of fact demonstrate that the plaintiffs' properties meet the definition of "agricultural land" and so are eligible. The agency repeatedly states that plaintiffs use their land to produce "agricultural products." Plaintiffs raise crops that are cultivated, harvested and marketed on a regularly scheduled basis. In Wolfhole's case, the Director of the NAD wrote:

> [Plaintiff] planted the pine trees in rows and mowed, sprayed, pruned and harvested them. The tree crop consisted of pine needles, wood shavings, fence posts and mulch that [plaintiff] sells in several states. The cultivation and marketing of the trees is a multi-million dollar farming operation, and the annual sales of the tree products are $250,000.

Thus, although the decision refers to the trees as a "crop," the director nevertheless concluded that the land on which the trees sit is not "cropland." On its face, this reasoning makes no sense.

It is true that the regulation's definition of "forest land" is broad enough to encompass the plaintiffs' agricultural operation, but only because plaintiffs' land contains trees. This fact alone is not sufficient to deny plaintiffs' claims. By focusing solely on the issue of what qualifies as a "forest," the agency's reasoning fails to address the dispositive question at issue. The primary question to be considered is whether plaintiffs' properties meet the definition of *eligible* land. Eligible land is defined to include private agricultural land. Therefore the agency was required to look at the entire definition of agricultural land in order to determine whether the plaintiffs' properties qualified for the program.

The definition of agricultural land encompasses land of the type maintained by the plaintiffs. Agricultural land includes "land on which food, fiber and other agricultural products are produced." The hearing officers and agency officials who described plaintiffs' land repeatedly referred to the pine needles and other harvested items as "agricultural products." It is difficult to conceive how these products could be considered as anything else. Since the plaintiffs use their land to produce agricultural products, plaintiffs' properties meet the regulatory definition of agricultural land.

The regulations' definition of "cropland" provides further support for plaintiffs' argument. It is unnecessary for me to address whether plaintiffs' property specifically meets the definition of cropland. However, the cropland definition specifically includes orchards – properties that obviously consist of single-stemmed woody species like those maintained by plaintiffs. Presumably any orchard would also meet the regulatory definition of a "forest." But it is clear from the regulation text that this is not reason enough to deny CSP participation for a property primarily consisting of trees.

The government argues that forested land is only eligible if it is incidental to the agricultural operation. But it is unreasonable to read this language to mean that farms based on growing trees are *per se* ineligible. Taken as a whole, the regulations broadly cover any land yielding agricultural products, including land that consists of trees. If the regulations sought to exclude wholesale any agricultural operation centered around trees, they would say so – and they would not include orchards in their definition of cropland. Even the agency's own manual for implementing the CSP includes "cropped woodland" in the definition of cropland – land where "at least 50% of the area is actively managed to produce an agricultural product. The crop may be . . . harvested directly from the trees, such as maple syrup." Though the agency notes that plaintiffs' farming of pine

needles is unusual, the agency has failed to show why this operation producing agricultural products is ineligible.

I find that the Department of Agriculture's decision in this case runs contrary to the evidence, and is not entitled to deference. *Siebrasse v. United States Dept of Agriculture*, 481 F.3d 847, 851 (8th Cir. 2005). The agency's conclusion regarding the eligibility of plaintiffs' pine tree acreage is not supported by the regulation text. Plaintiffs are therefore entitled to summary judgment on this issue.

Wolfhole raises a number of additional arguments relating to the classification of its pastureland. I need not consider these arguments, because I am vacating the government's decision with respect to Wolfhole's pine trees. According to the record, the agency has stipulated that if its decision as to the pine trees is reversed, Wolfehole's property as a whole will need to be reconsidered because the decision about the pine trees affected the decision about the pastureland. The proper result is for me to remand both cases to the Department of Agriculture for a new eligibility determination consistent with this memorandum and order.

Count II of plaintiffs' complaint was not the subject of the summary judgment motions. It alleges due process and equal protection violations. I cannot remand the case to the agency or enter a final judgment until this count is resolved.

I would grant a motion to dismiss the count without prejudice, but if plaintiffs do not wish to do that, we will set a further scheduling conference. I will therefore order plaintiffs to notify me within ten days of their intentions.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiffs' motion [#21] for summary judgment on Count I of the complaint is granted, and I conclude that the determination of the agency must be reversed and the applications should be remanded to the agency for further proceedings.

**IT IS FURTHER ORDERED** that defendant's motion [#24] for summary judgment on Count I of plaintiffs' complaint is DENIED.

**IT IS FURTHER ORDERED** that plaintiffs shall notify the court, in writing, no later than **April 30, 2008** whether they wish to dismiss their Count II or whether I should set a further scheduling conference.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 17th day of April, 2008.